KING, J.
This case was tried in this court on appeal. The facts, briefly stated, are that the Miami Oil Company, an Ohio corporation, became insolvent in 1897. About August 5th a receiver was appointed, on the petition of the plaintiff in this case. The plaintiff, at that time, was the president of the corporation. The matters in controversy submitted to us, are between certain of the defendants as to the right to the funds in the hands of the reoeiver.
The defendants, Holstein and Day, were employes of the Miami Oil Company, employed to conduct and manage the operation of a certain oil field or lease, being one farm. Holstein was the chief of those laborers, perhaps called the foreman, but performing substantially the same work as an ordinary employe; and he alleges he was employed for $60.00 a month. Day, the other defendant, was an employe who acted with Holstein, and perhaps some of the time under his direction and orders. He was employed at $50.00 a month. The evidence shows they were employed by the Miami Oil Company in the spring; perhaps Holstein was employed in March, *728 and Day in May. There is a little disagreement between them as to the time Day was employed; but at any rate, they were both employed in May, and both were paid up to" June first. It was the custom of the company to pay-them sometime about the tenth of the month their wages for the preceding month. So it happens, they were paid on or about June 10, their wages for May, and had also been paid the previous months for services rendered. Thereafter, they continued work, and performed such services as they were employed to do, until July 22, when they both quit. Their account here, is fbr wages from June 1, to July; 21, at the prices stated. As I have said, a receiver was appointed on August 5.
Prior to the employment of these men, and prior to the performance of these services for which they are seeking compensation, the oil company had executed and delivered to the National Supply Company, a chattel mortgage upon its effects, or some of them, to secure an indebtedness existing at the date of the mortgage, at least. The evidence does not. disclose whether it was an indebtedness existing before or not. That was prior to the rendition of these services.
After the receiver was appointed, a month or so, one Florence Ames purchased and received an assignment of this chatel mortgage from the Union Supply Company. She is here, insisting upon her right to this fund, as a defendant, against these two employes. The employes insist upon their payment before she shall be paid anything. They make this contention under section 3206a, Revised Statutes.
There is no controversy in the case about the performance of these services, or that these employes were not paid for them. There is, perhaps, some evidence that the oil company, in the last days of June, or early in July, finding that it was involved to some extent, made some kind of an arrangement with the National Supply Company, to operate this field. The extent and character of that arrangement is'not very definitely stated, but, assuming that it was as stated by counsel for Ames; that they were to operate it, receive the proceeds of the. oil, pay the expenses of operation, including the wages of employes, and any Jaalance, if any, after deducting the expense, to bo applied to their claim, still, there is no evidence to show that the defendants Holstein and Day were parties to that arrangement, or agreed to or accepted it in lieu of their previous employment, or in any wise bound themselves to look to the National Supply Company for their pay, in such a manner or form as would estop them from also asserting their claim against the Miami Oil Company, which had employed them originally. They were, in fact and in law, the employes of the Miami Oil Company on July 21, when they quit. Another suggestion is made, that they quit without notice to the Miami Oil Company, and for that reason they ought not to have any pay. They were employed by the month and for a month, and their employment did not last longer than a month. If either party saw fit to terminate the employment at the end of a month, he or they could do so. Neither saw fit to terminate it at the end of June, but, it is urged if they quit in the middle of the month following, they are not entitled to twenty-two days in July; but the evidence indicates that they were aceustomed to work, as I have said, to about the eighth or *729 tenth of the month before they received any wages, and it was about the eighth or tenth of the month that they were first notified that the Miami Oil Company was then unable to pay them. The Miami Oil Company did not notify them that they would not pay them, nor did it notify them to cease work, but that it was simply unable to pay. They were also told that the National Supply Company ought to pay them, and a note was given to one of the men to go to the National Supply Company. The note simply authorized him to go and get his pay of it, provided it would pay. But it further appears that they continued in this employment as long as there was anything for them to do, and their quitting when they did was a relief to the Miami Oil Company, to that extent, and was to its advantage. The Miami Oil Company was not able to longer operate that lease by reason of the fact that it did not have the money with which to make the necessary repairs, so things could be run along as they had been run. The employes called upon them for necessary repairs, in running the lease, and were informed that they could do nothing for them. There wasn’t anything for them to do. They staid until the 21st of the month, and then quit. When the means of employment ceased, they saw fit to discharge themselves.
The Miami Oil Company cannot complain that these men quit on July 25. So that the only question to be determined is, whether, under the statute, these men, as laborers, are entitled to their pay before the mortgagee, who received this mortgage before the wages were earned and before the commencement of the period that the statute gives preference to labor claims.
We had occasion to examine a case somewhat like this in-Wood county, and we there held that the laboring men were entitled to be paid, in the case of the appointment of a receiver or an assignee. There is, I should say, another statute on the subject of assignors, and we have to go back again to this statute to find out whether or not these men should be paid ahead of the mortgage. The statute is a vague'one in its-phraseology, and is perhaps a little difficult to understand, and yet we think it should receive such construction as will give it the effect intended.by the legislature, if it is possible-to get at that intent. The statute has been incorporated into section 3206a, Revised Statutes relating to liens, and the first clause is:
“Laborers and employe* of any person, association of persons or corporation', whether such employment be at agriculture, mining, manufacture or other manual labor, shall have a lien upon the real property of their employers for their wages, which is hereby declared to be superior to following liens taking or attaching during the existence of any such unpaid labor claims, to-wit: liens of attachment, liens of mortgages given or taken at a time of actual insolvency of the debtor, or with a view of preferring creditors or to secure a pre-existing debt; and superior to all claims for homestead or other exemptions except under section 5430.
This was not real estate, and no lien is claimed here upon real property. The evidence does not disclose that the lien of this mortgage was a preferred lien or given for a pre-existing debt; and so this clause does not dispose of the question.. *730 This is followed by the following clause, seemingly separate and apart from that which precedes it:
“And in all oases where property of an employer is placed in the hands of an assignee, receiver or trustee, claims due for labor performed within the period of three months prior to the time such assignee, receiver or trustee is appointed, shall be first paid out of the trust fund,in preference to all other claims against such employer, except claims for taxes and the costs ot administering the trust.”
The statute then goes on and provides:
“The lien herein provided shall be deemed to be waived by the laborer or employe, as to any portion of such labor, unless within thirty days from the expiration of three months from the performance of such portion he shall file with the reoorder of the county where the labor was performed, an itemized statement verified by affidavit, of the amount, kind and value of the labor performed within said period, with all credits and offsets, and the amount then due him therefor, whioh verified statement, when so filed, shall be recorded in á book kept for the purpose, and shall become and operate as a lien upon the real property of the employer without any specific description thereof, for the period of one year from and after the filing thereof.”
There are some other provisions of the statute, which was passed in 1883, and is here called 3206b. It reads:
“The provisions of the foregoing section shall apply to and include any laborer who indirectly performs labor for a general employer, or the results of whose labor is immediately enjoyed by a general employer whenever such general employer assumes payment of suoh laborer’s wages by passing a credit therefor upon his books of acoount or otherwise, and whenever the provisions of this section apply, all proceedings thereupon shall be the same as provided in the preceding section. But nothing in the foregoing section shall be so com strued as to affect or impair any valid and subsisting lien existing at the time of the passage of this act.”
It is contended, and it is a fact in this case, that these laborers never filed any attested account with the recorder They never did any of the things required by this statute, to enable them to perfect a lien upon real property. It is argued that the clause which I read is only a part of the whole statute, and is to be construed with it, which is undoubtedly true; but it is also argued that it only applies and limits the amount and kind of a claim that a lien may be taken upon real property for; that the clause, that one should be paid for his labor for three months prior to the time of the appointment of the receiver, and paid in preference to all other olaims, simply means that it is a olaimlpassed into a lien and made effectual by a lien duly attested and filed, and that such a claim - and such a lien shall be for wages for three months only, and in that case shall be, not as it provides here, paid in preference to all olaims against the employer except olaims for taxes and costs, but subject to the provision in the first clause that it shall be superior to the liens of attachments and mortgages given or taken at the time of the existence of a state of aotual insolvency, or given to creditors to secure a pre-existing debt. In other words, these clauses can be so construed as to be *731 made exactly harmonious with.other provisions of the statute that it must apply to the same kind of a lien. We are unable to adopt that construction which would force this to be a lien only on real estate. We do not think the legislature intended to provide that, or if they did, they adopted woefully poor pharseology to manifest it. They have provided for liens on real estate, and on the same general subject matter, to-wit, preference of labor claims, they have provided that whenever a receiver or trustee or assignee is appointed-, that notwithstanding one may have a lien upon the real estate for his wages, without limitation as to time, he shall be paid out of any fund in the hands of this trustee, irrespective of whether it may arise from real or personal property; not all that may be due him, but the wages earned within three months prior to the appointment of the trustee, and whatever that may amount to, not exceeding three months’ time, he shall be paid, not superior to mortgages given to secure pre-existing debts, but superior to all other claims against this fund. And to make that more particular, they have said "all other claims”, giving us the exceptions — taxes, coste of the trust. By this, we would understand that the costs of administering the trust would be paid. All of us would understand that this has universally been the law of this state, and that this is onlj a recognition of it in this matter. Taxes which are specific liens, are always paid ahead of any liens created by contract; that whoever actually loans money and takes a mortgage upon property upon which specific liens for taxes would attach, must always take his mortgage subject to the lien for taxes. Is it any greater hardship to provide, that whoever shall make a contract for a lien upon personal property shall take a lien subject to the liens of persons who have been employed to manage, oontrol and conduct that personal property, if it is employed in the business? It does not seem to me that it is any hardship. There is a statute, section 3207, Revised Statutes, which provides, substantially, that laborers who have performed any work in the construction of a railroad shall be paid ahead of those who may take mortgages upon the property to secure money actually advanced. Great stress is, or might be, laid in argument upon the idea that it would be against public policy, as it has been expressed in some places, to say that there shall exist a lien that would be ahead.of any lien that might be created for money actually advanced by contract. But the lien is created in favor of a policy that is the very highest form of public policy, i. e., looking after the wages of laboring men who may be unable to look after their own, not for an unlimited time, but simply that they shall be paid for the last three months prior to the appointment of the assignee.
There is quite a discussion of this question in a case, not perhaps germane to this, but out of which considerable could be found, in Jones v. Great Southern Fire Proof Hotel Co., 39 Weekly Law Bulletin 275. The case is on.e arising under the mechanic's lien laws of Ohio, but it is none the less valuable, because the learned judge takes up all those questions of common law liens, and statutory liens that have been made for the benefit of the laborer; and while he arrived at a different conclusion from the supreme court, yet he was not under *732 taking to construe a statute such as this, which in express terms provides ,for the payment of all olaims due for labor arising three months before the appointment of the assignee or trustee.
O. T. Johnson, for Plaintiff.
Johnson Thurstin, for Defendants.
Unless we eliminate that clause from the statute, we could not do otherwise then a'low these claims. We are not in position to say but that the legislature intended to do exactly that thing. If they did, I am satisfied they had a right to do it. It is a constitutional enactment. The reasons in favor of its enactment, so far as public policy is concerned, in my judgment, are higher and better than any that can be urged against it. So we decree that these two laborers shall have their pay out of the fund; decree otherwise as it was before.